IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SAIGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 5495 |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | Judge Jorge L. Alonso |
| and COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, John Saiger, sues Cook County and Thomas Dart, the Sheriff of Cook County, under 42 U.S.C. § 1983 for deliberate indifference to his medical needs in violation of the Fourteenth Amendment. Before the Court are defendants' motions for summary judgment. For the reasons explained below, the County's motion is denied and Dart's motion is granted.

**FACTS**

At all times relevant to this suit, the Sheriff has operated the Cook County Jail (the "Jail"), and the Cook County Health and Hospitals System ("CCHHS"), which operates Cermak Health Services ("Cermak") at the Jail, has provided healthcare services to Jail inmates. In January 2011, the Sheriff and CCHHS entered into an Inter-Agency Agreement (the "Agreement") in which they acknowledged their "mutual responsibility and interdependence in meeting the health care needs of detainees consistent with the safety and security of detainees and staff." (ECF No. 89, Pl.'s L.R. 56.1(b)(3)(C) Stmt., Ex. 1, Inter-Agency Agreement at 1.) The Agreement requires the Sheriff to participate with Cermak in a coordinated approach to deliver healthcare to detainees; make readily available to detainees forms provided by Cermak

for use in making healthcare service requests ("HSR forms"); and accommodate secure locked boxes in each detainee living unit for depositing HSR forms.

It is Cermak's written policy that 1) for non-emergency healthcare requests and services, detainees are to fill out a written HSR form and place it in the HSR deposit box in their living unit; 2) Cermak health staff are to retrieve the HSR forms from the deposit boxes each day and "promptly" deliver them to the divisional dispensary; and 3) a Cermak nurse or other qualified healthcare professional will review each HSR form within twenty-four hours of its arrival at the dispensary and triage HSRs that contain requests for clinical services. For healthcare requests that warrant urgent or same-day evaluation, the healthcare professional is to make the corresponding arrangements, and for other healthcare requests involving medical or dental symptoms, schedule a face-to-face evaluation by a nurse or other qualified healthcare professional, in a clinical setting, within one business day. (ECF No. 82-4.)

Saiger entered the Jail as a pretrial detainee on March 13, 2013 and remained there until he was transferred elsewhere in June or July 2014.[1] Plaintiff says that on March 23, 2013, while he was a detainee in Division II of the Jail, one of his teeth "broke,"[2] resulting in severe pain. According to plaintiff, he told a security officer what had happened and said he was in pain, and the officer told him there was nobody in the dispensary and that plaintiff needed to fill out an HSR form. Plaintiff says that then he completed an HSR form requesting dental care and put it in the HSR drop box the next morning. He also says that because the medical staff did not

---

[1] He is now out of prison and living in Urbana, Illinois.

[2] Plaintiff testified at his deposition that "[a]lmost the entire back half" of the tooth "broke off." (ECF No. 82-3, Dep. of John Saiger 58.) Plaintiff's medical records are silent on the issue of whether the tooth was broken or cracked.

respond to that form, about two weeks later he submitted a second HSR form requesting dental care. According to defendants, there are no such HSR forms regarding dental care in plaintiff's Cermak medical chart.[3]

Plaintiff was moved to the Jail's Division III Annex on May 31, 2013. Because he did not receive a response to his two HSR forms, he says, on June 5, 2013, he submitted a grievance in in which he requested "immediate dental treatment" and further stated:

> On Saturday March 23rd 2013 I was eating my dinner meal when a piece of my lower right wisdom tooth broke off. I have been experiencing severe dental pain since that time. I have submitted multiple medical request slips and have informed the medical staff at the dispensary as to the nature of my problem. I have received no relief yet and I am still experiencing severe pain. It has been over 70 days and I have received no treatment.

---

[3]Defendants also assert that there is a "log of the lock box pick up for March and April 2013 verifying retrieval" of inmates' HSR forms for Division II living units. (ECF No. 82, Defs.' L.R. 56.1(a)(3) Stmt. ¶ 10.) In support, defendants cite their Exhibit N, which is a five-page handwritten log that simply indicates how many forms were collected each day and by whom (but not which inmates' forms were picked up). Plaintiff objects to Exhibit N for lack of an authenticating declaration. But while a party may object on summary judgment that supporting material "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), plaintiff does not so contend. "[F]ederal courts routinely consider unauthenticated documents on motions for summary judgment . . . when it is apparent that such documents are capable of reduction to admissible, authenticated form." *Boyce v. Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) (brackets and citation omitted). It appears that the collection log is a business record that could be authenticated at trial and thus properly considered on summary judgment. Nonetheless, it is unavailing to defendants on summary judgment because, as discussed below, plaintiff's testimony creates a genuine issue of fact as to whether he submitted HSRs in March and April 2013.

(ECF No. 82-6, 6/5/13 Inmate Grievance Form.)[4] The grievance was picked up by the Sheriff's staff on June 6, 2013, and referred to Cermak on June 7. On June 11, 2013, plaintiff was given a response to this grievance indicating that a dental appointment was scheduled for June 25, 2013. Plaintiff appealed the grievance on June 19, 2013, stating that the appointment was "not soon enough" because he was "in severe pain and need[ed] immediate treatment." (*Id.*, Inmate Grievance Response/Appeal Form.) Cermak staff received that appeal on June 21, 2013. (*Id.*, Grievance Appeal Notation.)

On June 22, 2013, plaintiff was moved to Division VIII of the Jail. He was not taken to his June 25 appointment. Through a response to his appeal of the grievance, he was informed that he had a dental appointment on July 5, 2013. (The corresponding notation also says "Moved divisions.") But plaintiff was not taken to that appointment either. According to plaintiff, his dental injury caused him "serious pain" and occasional swelling. (Saiger Dep. 118.)

On September 13, 2013, Dr. Thomas Prozorovsky, a dentist, saw plaintiff. Dr. Prozorovsky examined plaintiff and took an x-ray, and he diagnosed plaintiff with "irreversible caries" (extensive decay, also known as a cavity) in tooth number 32—a wisdom tooth—with an abscess. Dr. Prozorovsky concluded that the tooth should be surgically extracted in two weeks, and he prescribed plaintiff Motrin for pain and amoxicillin for the abscess. He also

---

[4]Defendants submit the affidavit of Theresa Olson, the Director of Inmate Services at the Jail, who states as follows about the use of grievances: "While a grievance may result in the scheduling of an appointment to see a health care provider, inmates are directed that health service request forms are the appropriate method with which to get an appoimtent [sic] for any medical or dental health care issue that is not an emergency." (ECF No. 82-5, Aff. of Theresa Olson ¶ 16.) Olson does not say by whom or how inmates are so directed. Plaintiff points out that the Jail's Inmate Information Handbook states that inmates "may file a grievance if [they] believe" that they "are not receiving medical, dental, or mental health help that [they] need." (ECF No. 82-5, Inmate Information Handbook at 20-21.)

recommended "gross debridement."[5] Dr. Prozorovsky's order included a follow-up date of September 27, 2013, and indicated that a follow-up appointment was a "priority."[6] (ECF No. 82-8 at 31.) It is not the dentists' responsibility to schedule patients for appointments; rather, the Cermak Patient Scheduling department is responsible for making and confirming appointments. That department was staffed by four clerks who had little formal training.

It is unclear from the record whether a September follow-up appointment was scheduled, but plaintiff was not taken to the dentist again that month, nor in October or November.[7] On December 1, 2013, plaintiff filed a grievance requesting "immediate dental care," in which he complained that he had been seen by the dentist on September 13; the dentist had confirmed that plaintiff's right rear wisdom tooth needed to be extracted; plaintiff was prescribed a week's worth of pain medication and antibiotics and told he would be scheduled to return on September 20 for the extraction and soon thereafter for a cleaning; he was never "called for either;" he had been in pain for nine months; and he believed that in the meantime, he had developed a "brand new serious and painful cavity on a different tooth." (ECF No. 82-7, 12/1/13 Inmate Grievance Form.) The grievance was received by the Sheriff's staff on December 5, 2013, and referred to Cermak on December 9. Cermak responded that plaintiff had a dental appointment scheduled for December 20, 2013.

---

[5]Dr. Prozorovsky defined "gross debridement" as "basically a cleaning." (ECF No. 82-9, Dep. of Dr. Thomas Prozorovsky 53.)

[6]The other categories were "urgent" and "routine." (ECF No. 82-10, Dep. of Dr. Randy Rabin 40.)

[7]During this time frame, between September 2013 and December 20, 2013, plaintiff was prescribed pain medication for his back. He was allowed to keep his prescribed medication on his person and in his dorm.

5

On December 20, plaintiff saw a second dentist, Dr. Randy Rabin. Dr. Rabin examined plaintiff, took an x-ray, and concluded that plaintiff had caries in teeth 32 and 29. He recommended that both teeth be extracted, and he prescribed plaintiff Motrin and amoxicillin. Dr. Rabin planned to remove tooth 29 in two weeks. As for tooth 32, he referred plaintiff to an oral surgeon for an extraction.[8] He also referred plaintiff to a hygienist for gross debridement.

On December 29, 2013, plaintiff appealed the response to the grievance he had filed on December 1 and stated: "As of 12-29-13 my two broken and infected teeth have not been removed and I am still in severe pain and suffering on a daily basis." (*Id.*, 12/1/13 Inmate Grievance Response/Appeal Form.) Cermak responded on January 10, 2014 that plaintiff had an appointment for oral surgery scheduled for "early Feb 2014." (*Id.*, Grievance Appeal Notation.)

On January 14, 2014, plaintiff saw Dr. Liu. Instead of extracting teeth 32 and 29, Dr. Liu filled them. Dr. Liu explained at his deposition that he chose to fill the teeth so that plaintiff would have some pain relief. (Liu Dep. 95, 99-100.) In Dr. Liu's opinion, the treatment he provided was a temporary solution that would yield only partial relief, because two dentists had already decided that the teeth required extraction and had prescribed antibiotics. (*Id.* at 100.) As of the date plaintiff was deposed in July 2015, he still had both teeth.

With respect to unrelated healthcare matters (prescription refill requests and requests to see an eye doctor), plaintiff submitted HSR forms on May 31, 2013; June 30, 2013; July 18, 2013; September 25, 2013; and November 25, 2013, in which he did not include any complaints about dental problems. Plaintiff saw Cermak medical staff for unrelated healthcare matters on

---

[8]Dr. Jack Liu, the third dentist plaintiff saw, stated at his deposition that in 2013, he made such referrals by completing a form and sending it to the Patient Scheduling department, which handled the referral from that point on. (ECF No. 82-11, Dep. of Dr. Jack T. Liu 85-86.)

April 22, 2013; June 21, 2013; and December 12, 2013, and the corresponding records do not indicate that plaintiff complained about dental problems during these visits. The physician assistants ("PAs") who saw plaintiff on those dates state in affidavits that it is their practice to record any complaints about pain, including dental pain, in a patient's chart, and the fact that they included no notes regarding dental pain "indicates that" plaintiff did not complain to them about dental pain. (ECF Nos. 82-12, 82-13 & 82-14, Affs. of Claudette Cohen, Salvador Martinez, & Kevin Sims ¶¶ 4-5.) On the other hand, plaintiff testified that he is certain he mentioned his dental pain to the respective physician assistant at each visit and that he mentioned the pain to every medical professional he could speak to. (Saiger Dep. 51-53, 63-64, 78-79.) According to plaintiff, he got "the same answer from every PA, and that is, we don't care about dental. Fill out a form." (*Id.* at 64.)

## DISCUSSION

**A.  Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). Rule 56 imposes the initial burden on the movant to inform the court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue,

7

the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not depose his own witnesses or produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings to demonstrate that there is evidence upon which a jury could find in his favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

Plaintiff asserts that defendants' inadequate practices regarding the treatment of HSR forms and health grievances as well as dental scheduling subjected him to serious and avoidable pain. To defeat defendants' motions, plaintiff must offer evidence that suggests each defendant had a policy of being deliberately indifferent to detainees' objectively serious medical needs and that plaintiff was injured as a result. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016); *see also Bd. v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (the Seventh Circuit applies the same standard to claims arising under the Fourteenth Amendment (for detainees) and the Eighth Amendment (for convicted prisoners) "without differentiation"). A policy, in this context, includes a widespread practice that is so well settled and permanent that it constitutes a custom with the force of law. *Teesdale v. City of Chi.*, 690 F.3d 829, 834 (7th Cir. 2012). Plaintiff must come forward with evidence that could allow a reasonable trier of fact to find "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system," and that "a policymaker or official knew about these deficiencies and failed to correct them." *See Daniel*, 833 F.3d at 735. Although plaintiff need not present

8

evidence that such systemic failings actually caused pain and suffering to other specific inmates, he must show more than the deficiencies specific to his own experience. *See id.* at 734-35. Generally, an inmate can meet this burden by offering competent evidence tending to show a general pattern of repeated behavior—"something greater than a mere isolated event" or occasional lapses. *Id.* at 734; *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (stating that there is "no clear consensus" as to how frequently conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three); *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) (three incidents were too few to suggest that the City had a widespread custom of which City policymakers had reason to be aware).

**B.  Serious Medical Need**

As an initial matter, the Court notes that although the County argues in passing that plaintiff's medical needs were in fact not serious, neither defendant argues that plaintiff has failed to present enough evidence to support a finding that he had objectively serious medical needs. The Court concludes that plaintiff's evidence is sufficient. He says that he repeatedly complained about severe dental pain, and it is undisputed that in September 2013 he was diagnosed with extensive decay and an abscess. The unnecessary infliction of prolonged and severe pain can amount to a serious medical need, *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008), as can an abscess, *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("A tooth abscess is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond. It is often painful and can be dangerous."), or tooth decay, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

### C. Cook County's Motion

The County contends that 1) plaintiff has no evidence of deliberate indifference; and 2) plaintiff cannot demonstrate the existence of any widespread practice of the County that was the moving force behind his delayed dental care. (ECF No. 87, Cty.'s Mem. Supp. Mot. 2.)

#### 1. Deliberate Indifference

As to deliberate indifference, the thrust of several of the County's arguments throughout its briefs is that plaintiff's story is not believable.[9] On summary judgment, however, the Court may not weigh the evidence or decide credibility questions. *See McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

The County first argues that plaintiff "cannot raise a genuine issue of material fact to support a finding that he suffered a constitutional deprivation because the delay in his seeing a dentist was due to his failure to put in health service request forms, and then attempting to use the grievance form as the vehicle for dental care." (Cty.'s Mem. Supp. Mot. 4.) But it is plaintiff's testimony that in March 2013 he submitted two HSR forms that were ignored. Defendants say that they have no record of such forms, but that does not mean plaintiff has failed to raise a fact issue on that point.[10] As for plaintiff's use of a grievance form in June 2013, the County argues that an HSR is the "preferred" method for securing healthcare "because it is

---

[9]For instance, the County states that "[t]he fact that a filling alone has held the Plaintiff's two teeth at bay and he is without substantive pain even now, indicates that the pain he suffered was not likely acute." (Cty.'s Mem. Supp. Mot. 12.) Plaintiff claims otherwise.

[10]The County also contends that its medical records "indicate that when Plaintiff was seen by a medical provider, he never mentioned his dental pains" and that "this type of omission is significant." (Cty.'s Mem. Supp. Mot. 11-12.) But there is a genuine issue of material fact on that point too, because plaintiff says that he complained about his dental pain to every medical provider he could speak with during the relevant period.

more timely than the grievance process" and that the delay in the provision of dental care to plaintiff "came from his decision not to put in health service request forms about his teeth." (*Id.* at 6; ECF No. 92, Cty.'s Reply 1-2 (emphasis omitted).) The County does not develop its argument by explaining what it believes is the legal effect of plaintiff's use of a grievance versus an HSR form. It appears to be a causation argument, but the record shows a triable issue there. While defendants may "prefer" that inmates use HSR forms to complain about medical issues, the Jail's Inmate Handbook expressly states that inmates can use a grievance to complain about "not receiving medical, dental, or mental health help that [they] need." (Inmate Information Handbook at 20-21.) It is undisputed that in early June, plaintiff complained in his grievance of "severe" dental pain from a broken tooth that had occurred in March. Officials responded to his grievance, yet plaintiff was not seen by a dentist until more than two months after the response. That delay is unexplained,[11] as is the three-month delay that occurred after the initial dental visit in September 2013. Such delays in effective medical treatment support a claim of deliberate indifference. *See Berry*, 604 F.3d at 441. And, given plaintiff's evidence, as discussed below, a reasonable jury could infer that the delays in plaintiff's seeing a dentist were caused by

---

[11]The County submits that "[d]etainees fail to show for follow up appointments for myriad reasons none of which are sinister or a portent of systemic problems. These reasons include: transfer, release, too tired, refusal, in court, or the tooth stopped hurting. The fact that a detainee is a 'no show' is a necessary consequence of a correctional facility, where the time is by its nature temporary." (Cty.'s Mem. Supp. Mot. 10 (citation omitted).) The Court acknowledges that this is an argument regarding why it is reasonable for Cermak medical providers not to treat as a "red flag" an inmate's failure to attend an appointment. But generally, it is a peculiar argument, for two reasons. First, plaintiff was in custody. He was not free to move about or simply show up at the dental clinic. There is no evidence that he was released, was too tired or refused to go to any appointment, had a court date, or his pain had ceased. There is evidence that he had been transferred among divisions, but it is not evident why such movement would reasonably affect a previously-scheduled medical appointment. Second, the County's argument relies heavily on the existence of a lack of communication between the Sheriff's Office and the Cermak dental clinic, which only bolsters plaintiff's case.

deficiencies in Cermak's scheduling procedures, not plaintiff's choice of form used to voice his complaint.

The County also asserts that to prove deliberate indifference, plaintiff must show that the Cermak medical personnel he saw in 2013 and 2014 (the three dentists and three PAs) "actually realized that there was a serious harm and knowingly refused to do anything to alleviate it." (Cty.'s Mem. Supp. Mot. 4-5 (emphasis omitted).) Given the nature of plaintiff's allegations, this argument is misplaced, and it also fails to recognize Seventh Circuit authority. Plaintiff is not complaining about the quality of his dental treatment or what his medical treaters did or did not do. He is complaining about alleged deficiencies in the Jail's system of responding to health complaints and scheduling healthcare appointments and follow-up appointments. At this stage of the case, plaintiff is not seeking to hold any medical provider responsible for his injury; like the plaintiff in *Daniel*, he "contends instead that the delays . . . that caused his injury were caused by systemic problems in the health care system for the Cook County Jail that reflect deliberate indifference to inmates' health needs as a matter of official custom, policy, or practice." 833 F.3d at 734. The Seventh Circuit previously recognized this kind of *Monell* claim and rejected the County's argument in a case that similarly involved alleged breakdowns in the County's policies for retrieving medical request forms, stating as follows:

> The County, in this case, appears to push for a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*. This is an unreasonable extension of *Heller*. What if the plaintiff here had only sued the County, or didn't know, because of some breakdown in recording shifts, who the [medical technicians] on duty were? The actual rule, as we interpret it, is much narrower: a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.

*Thomas*, 604 F.3d at 305 (emphasis omitted) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

2. **Widespread Practice**

The County further maintains that summary judgment in its favor is warranted because there is no evidence of a practice of "not picking up or reviewing health service request forms and that 'a registered nurse or higher level practitioner would not conduct face to face assessments'" or that "the manner in which the County is handling [scheduling] is below constitutional standards." (Cty.'s Mem. Supp. Mot. 13; Cty.'s Reply 6.)

In response, plaintiff argues that there is evidence of widespread delays and breakdowns in Cermak's collection and review of HSR forms, resulting from a nurse shortage that in turn resulted from a dysfunctional hiring process. Plaintiff relies on the following evidence: 1) the deposition testimony of Cynthia Kienlen,[12] who was Cermak's Chief Nursing Officer from 2011 until April 2014; 2) a September 2013 email written by Dr. Jorelle Alexander, Cermak's director of oral health; 3) the deposition testimony of Maria Vega and Shlanda Williams,[13] who worked as clerks in Cermak's Patient Scheduling department; and 4) the trial testimony of three other Jail inmates, Jonathan Williams, Quentin Scott, and Orlando Allen, in *Smentek v. Sheriff of Cook County*, No. 09 C 529 (N.D. Ill.).[14]

In the deposition excerpts plaintiff cites, Kienlen stated that at the relevant time, Cermak had a "dysfunctional hiring process" that resulted in long delays in hiring nurses; she had prepared weekly written reports about the nursing shortage for her superiors, including Cermak's

---

[12] Kienlen's deposition was taken in *Roland v. Dart*, No. 14 C 10161 (N.D. Ill.)

[13] Vega and Shlanda Williams's depositions were taken in *McGee v. Dart*, No. 14 C 3495 (N.D. Ill.).

[14] Plaintiff also relies on the deposition testimony of Matthew Burke in *Roland* and excerpts from a May 2014 report written by Dr. Esmaeil Porsa submitted in another case, but the Court agrees with Dart that those materials are not admissible for the reasons discussed below.

Chief Operating Officer ("COO"); in relation to other federal litigation presided over by Judge Virginia Kendall, Kienlen had attended a meeting in 2013 with Cermak's COO, the County health system's director of human resources, the court monitor, and Judge Kendall, during which Kienlen agreed with the monitor's statement that the hiring problem affected Jail healthcare; in Kienlen's opinion, between May 2013 and when she left the County's employment in April 2014, access to healthcare at Cermak was "compromised" in that in order to keep up with medication administration, responses to HSRs would have to be "put off" when normally a patient would have been seen "immediately"; Kienlen believed that increased staffing for the collection and assessment of HSRs would have improved access to care; and she agreed with Dr. Shansky's recommendation to centralize the collection and triage of HSRs. (Pl.'s L.R. 56.1(b)(3) Resp., Ex. 2, Dep. of Cynthia Kienlen 36-37, 43, 47-49, 71-72, 75-77.)[15]

Dr. Alexander, in her September 10, 2013 email to the Jail's chief dentist, listed matters that had apparently been identified for "discuss[ion] and follow up" during a meeting with Cermak adminstrators." (Pl.'s L.R. 56.1(b)(3) Resp., Ex. 5.) Under the heading "Scheduling," Dr. Alexander stated: "Current process is inefficient"; "Return appointments as well as grievances, HSRF, etc are not being scheduled appropriately"; "Current schedule violates union contracts for support staff having to work through lunch"; "Current schedules are inefficient"; "Assistants need access to scheduling"; "Would like to employ a scheduling template to include intake exams, yearly exams, grievances, procedures, and Emergencies"; and "Would like to

---

[15]Defendants argue that Kienlen's testimony is "disputed as biased because she was terminated from employment" by the County. (ECF No. 91, Defs.' Resp. to Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 10.) But, as explained above, the Court does not resolve credibility issues on summary judgment.

separate the schedule into morning and afternoon clinics 10 morning and 5 afternoon with the ability to have add-on's per Dr. Request." (*Id.* at 1.)

In the Court's view, Kienlen's testimony along with Dr. Alexander's letter are sufficient to support a finding that as a result of County policymakers' indifference (particularly with respect to staffing), there were systematic deficiencies in the review of and response to HSR forms[16] and the scheduling of dental appointments, which led to delays in dental treatment, such that plaintiff's experience was not merely an isolated lapse.[17] Dr. Rabin and Dr. Liu's testimony also reflects a lack of communication between the dentists and the Scheduling Department, and Jail personnel and Cermak, regarding the dentists' recommended follow-up appointments and whether inmates were brought to those appointments. (Rabin Dep. 34-38, 55-58; Liu Dep. 26-27, 55-58, 74-75, 86.) In addition, Jail inmates Jonathan Williams, Quentin Scott, and Orlando Allen all testified that in 2013 they experienced unexplained delays in responses to HSRs and grievances as well as treatment for their dental problems, and suffered dental pain as a result. All of this evidence, taken together, raises a genuine issue of material fact as to whether plaintiff's injury was the likely result of systemic deficiencies in Cermak's provision of medical care. *See Thompson v. Taylor*, No. 13 C 6946, 2016 WL 5080484, at *7-9 (N.D. Ill. Sept. 20, 2016) (concluding that plaintiff had presented sufficient evidence of the County's widespread practice of delayed responses to inmate dental complaints in 2013). Plaintiff's evidence reflects

---

[16]The record does not, however, support a finding that there were systematic deficiencies in the *collection* of HSR forms.

[17]Accordingly, the Court need not address defendants' objections to Vega's testimony. The cited portions of her testimony and that of Shlanda Williams lend plaintiff only minimal support at this juncture, and the Court has not relied on it other than for the proposition that the Scheduling Department was staffed by four clerks with minimal training.

the "common scenario" the Court of Appeals described in *Daniel*, where "an institution structured its affairs so that no one person was responsible for the inmate's care, and such diffused responsibility can make it very difficult to show individual responsibility for health care failures." 833 F.3d at 734 (internal quotation marks and brackets omitted).

Because plaintiff has presented sufficient evidence of a widespread practice by the County that was the moving force behind his injury, the Court denies the County's motion for summary judgment.

**D.     Dart's Motion**

The Court previously ruled, on Dart's motion to dismiss the Second Amended Complaint, that plaintiff may proceed against Dart only to the extent that his *Monell* claim is based on the treatment of HSR forms.[18] (ECF No. 70, Mem. Op. & Order.) The Court rejected Dart's argument that the treatment of HSR forms was pursuant to a County policy or practice that cannot be used to maintain a *Monell* claim against the Sheriff, on the ground that plaintiff had plausibly alleged that the Jail, which is under Dart's purview, had a widespread practice of failing to address HSR forms in a timely manner. (*Id.* at 5 & n.2.)

Dart contends that there is no evidence of 1) the existence of a widespread practice of HSR forms being collected or reviewed in an untimely fashion; or 2) that Dart turned a blind eye to such a known practice. (ECF No. 84, Dart's Mem. Supp. Mot. 1.) The Court concluded above that there is sufficient evidence to support a finding that there were systematic deficiencies in the review of and response to Jail inmates' HSR forms and the scheduling of dental appointments, which led to delays in dental treatment. Therefore, the remaining issue

---

[18]The Court held that plaintiff failed to allege facts that plausibly supported an inference of the policies or practices that were the other bases for his *Monell* claim against Dart.

regarding Sheriff Dart is whether plaintiff has pointed to evidence sufficient to enable a jury to conclude that Dart knew about those deficiencies and failed to reasonably respond to them. *See Daniel*, 833 F.3d at 735.

In response to Dart's motion, plaintiff contends that the Sheriff "was aware the Jail had a critical nurse shortage, that HSR forms were not timely reviewed, that inmates lacked access to timely healthcare, and the inmates were at a risk of harm." (ECF No. 90, Pl.'s Mem. Opp'n 14.) To support this argument, plaintiff relies on his Local Rule 56.1(b)(3)(C) Statements 4, 6 through 10, and 12 through 14, which cite three supporting items: 1) Kienlen's deposition testimony; 2) the deposition testimony of Matthew Burke,[19] who was the Chief of Staff for the Cook County Department of Corrections ("CCDOC") in 2014 and 2015 and, prior to that, the CCDOC's first assistant general counsel; and 3) excerpts from a May 2014 report written by Dr. Esmaeil Porsa for another lawsuit, *United States v. Cook County*, No. 10 C 2946 (N.D. Ill.). Dr. Porsa's report (the "Monitor's Report" or "Dr. Porsa's Report") outlines the findings from his monitoring team's review of access to healthcare at the Jail.

In his reply, Dart objects to the admission of Burke's deposition testimony on the ground that plaintiff did not disclose him in initial or supplemental disclosures as a person likely to have discoverable information that plaintiff might use to support his claims, nor did plaintiff indicate that he might use Burke's deposition testimony, as required by Federal Rule of Civil Procedure 26. Dart attaches plaintiff's disclosures, which do not list Matthew Burke or his deposition testimony.

---

[19]Like Kienlen's deposition, Burke's deposition was taken in *Roland*.

To ensure compliance with Rule 26, Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Preclusion is "automatic and mandatory" unless "the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (internal quotation marks omitted). A party who has made a Rule 26(a) disclosure must supplement that disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Although Dart's objection is made in his reply, plaintiff did not seek leave to respond to the objection (but did seek leave to file supplemental authority as to summary judgment generally), and the Court can discern no justification or harmlessness in plaintiff's failure to disclose Burke. Furthermore, the Court rejects the notion that Burke was "otherwise made known" to Dart as a witness in *this* case through his testimony in an entirely different case. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12 C 3233, 2016 WL 7034074, at *7-9 (N.D. Ill. Dec. 2, 2016). Accordingly, the Court finds that Burke's deposition testimony is not admissible.

Defendants also contend that the Monitor's Report is inadmissible because it is hearsay. In *Daniel*, 833 F.3d at 743, the Seventh Circuit held that this Court "properly excluded" as hearsay a similar report authored by the court monitor in No. 10 C 2946, to the extent it was offered for the truth of its substance. This Court's analysis of that monitor's report as set forth in *Daniel v. Cook County*, No. 11 C 2030, 2015 WL 2375170, at *4-5 (N.D. Ill. May 15, 2015),

applies equally to Dr. Porsa's Report. Plaintiff asserts that in *Evans v. Dart*, No. 09 C 4853, 2015 WL 5675012, at *4 n.9 (N.D. Ill. Sept. 24, 2015), this Court "allowed for the use [of] the reports to show the Sheriff was on notice of the Justice Department's conclusions." (Pl.'s Mem. Opp'n 15.) But plaintiff is not relying on, and has not offered, the DOJ Letter discussed in *Evans* (and the *Daniel* decisions). Plaintiff presents no argument for why Dr. Porsa's Report should be admitted over Dart's objection. And plaintiff's notice argument is unavailing because Dr. Porsa issued his Report in May 2014, several months after plaintiff's teeth were filled.

Plaintiff is left with Kienlen's deposition testimony, which does not suggest that Sheriff Dart knew of the HSR and scheduling deficiencies and failed to take reasonable corrective action. The cited testimony is relevant to Dart's knowledge only in that Kienlen said she met with Dart every week to discuss healthcare, but conceded that they did not discuss the staff shortage at those meetings. Although Kienlen opined that Dart was "well aware" of the medical-personnel shortage, when she was asked the basis for this opinion, she cited only communications she had had from unspecified Sheriff's staff after the occurrence of what she called "events"—problems with Cermak's delivery of healthcare. (Kienlen Dep. 56-58.) But she did not say that Dart was aware that the shortage was affecting HSR collection and review. Plaintiff fails to cite any evidence that Dart knew about problems with dental scheduling, or evidence that sufficiently connects the dots, in terms of Dart's knowledge, between the staffing

shortage and the treatment of HSR forms.[20]  Accordingly, the Court grants Dart's motion for summary judgment.

## CONCLUSION

Defendant Thomas Dart's motion for summary judgment [83] is granted.  Judgment will be entered in favor of Dart and against plaintiff.  Defendant Cook County's motion for summary judgment [86] is denied.  A status hearing is set for May 30, 2017 to discuss the next steps in this case.

**SO ORDERED.**                                   **ENTERED:    May 10, 2017**

_____
**JORGE L. ALONSO**
**United States District Judge**

---

[20]The Court's ruling is not based on Dart's undeveloped argument that he is "entitled to defer to Cermak's treatment of HSR forms." (Dart's Mem. Supp. Mot. 12.)  Although Dart is generally entitled to rely on the judgment of medical professionals treating an inmate, *see Rasho v. Elyea*, 850 F.3d 318, 327 (7th Cir. 2017), it is unclear what medical judgment he says he relied on.  Dart's argument is somewhat reminiscent of his argument that the Seventh Circuit rejected in *Daniel*, 833 F.3d at 737, explaining as follows: "The Sheriff's Office argues that it cannot be liable for Daniel's injuries because it was not responsible for his medical care.  Instead, all treatment was to be handled by Cermak Health & Hospitals System, which is a medical facility separate from the Jail itself.  But the constitutional duty under the Eighth and Fourteenth Amendments to provide adequate healthcare rests on the custodian.  As the district court correctly noted, a government entity 'cannot shield itself from § 1983 liability by contracting out its duty to provide medical services.'"  *Id.* (citation omitted).